VILLA SIERRA CONDOMINIUM ASSOCIATION, a Colorado non-profit corporation, Mr. and Mrs. Robert G. Bond, Miss Evelyn M. Hollowell, William and Pauline Barber, Mr. and Mrs. Harry G. Hendler, Mr. and Mrs. Horace M. Woehler, Mr. and Mrs. Joe Orell, Naomi M. McCracken, Jamie Boswell, and James B. and Eileen Blaine, individually and as representatives of a class, Plaintiffs–Appellants,

v.

FIELD CORPORATION, a Colorado corporation; Villa Sierra Development, a joint venture; Hubchik & Davis, Inc., a Colorado corporation; Schuetz Construction Co., Inc., a Colorado corporation; and Hans Schuetz, an individual, Defendants–Appellees.

No. 88CA1484.

Colorado Court of Appeals, Div. IV.

Jan. 18, 1990.

David C. Mize, Colorado Springs, for plaintiffs-appellants.

Fowler & Schimberg, P.C., Jeffrey Cowman and Penne A. Goplerud, Denver, for defendants-appellees Field Corp. and Villa Sierra Development.

Retherford, Mullen, Rector & Johnson, Neil C. Bruce, Colorado Springs, for defendants-appellees Schuetz Const. Co. and Hans Schuetz.

Opinion by Judge CRISWELL.

Plaintiffs' appeal requires us to determine whether their suit meets the necessary prerequisites for a class action under C.R.C.P. 23(b)(3) and whether a condominium association has standing to assert claims on behalf of condominium unit owners against the builder-vendor for alleged construction defects. The trial court answered both questions in the negative. We reverse.

The individual plaintiffs are owners of "units" in a condominium project known as Villa Sierra. Villa Sierra Condominium Association (the association) is a Colorado not-for-profit corporation created to administer the applicable condominium declaration and to manage the property. The respective ownership interests and the rights and responsibilities of the association are set forth in the condominium declaration and in the articles and by-laws of the association.

The underlying property interest upon which the condominium's buildings were constructed consists of a long-term lease. A "unit" under the declaration is an "individual air space" that is enclosed within the interior roof, walls, and floors of each unit. Specifically excluded from this definition are the "structural components for the building" within which the unit is located. Thus, a "condominium unit" in Villa Sierra consists of the individual ownership of a "unit" (air space), an undivided common interest in the buildings and other common elements, and an undivided common interest in the underlying leasehold.

There are more than 200 units in Sierra Villa. Each owner is required to maintain and repair the non-supporting interior walls, floors, and ceilings of the building that enclose the unit. Except to this extent, however, the declaration imposes upon the association, as the owners' attorney-in-fact, the responsibility for the maintenance and repair of the buildings and other common elements.

All unit owners are members of the association. Its articles and by-laws recite that its general purpose is to provide "an entity for the furtherance of the interest of the owners of the condominium units." It is given the power to repair and improve the buildings and other common elements, "to protect and defend the entire premises from loss and damage by suit or otherwise," to engage in other activities designed to foster, promote, and advance the common ownership interests of the unit owners, and "to do all things, necessary and reasonable, in order to carry out the governing and the operation of [the] condominium property."

The defendant Villa Sierra Development is the joint venture that developed the condominium project. Field Corporation is one of the members of this joint venture, and the other defendants are the contractors who had responsibility for the physical construction of the project.

Plaintiffs, the association and several unit owners, sought to represent a class consisting of all of the present unit owners. Their complaint asserted that, prior to construction of the project, the defendants had been supplied with engineering reports upon the property's soil conditions, which reports made certain specific recommendations for construction to assure that the property would be properly drained. It was plaintiffs' allegation, however, that defendants failed to follow these recommendations, and as a result, surface and sub-surface water had accumulated at and under the buildings' foundations, improper soil conditions now exist under those foundations, the sub-surface has moved, a foul odor has been created, and there has been severe erosion of certain of the landscaped areas.

Plaintiffs assert that all defendants had been negligent and that the joint venture and its members had breached the warranties of fitness and habitability inhering in its sales contracts with the original unit owners and had made misrepresentations to them. As damages, plaintiffs sought to recover only the cost to repair the buildings and the landscaped areas and the cost of implementing the engineer's prior recommendations. No plaintiff sought any individual damages.

Based upon the foregoing factual background, plaintiffs sought a preliminary cer-

tification of the class under C.R.C.P. 23(b)(1) or (3). Defendants resisted such certification, and they argued, as well, that the association had no standing to assert any claims on behalf of its members.

The trial court, without giving any reasons for its actions, summarily denied plaintiffs' request for class certification, struck the complaint's allegations pertaining thereto, and dismissed the association as a party plaintiff.

## I.

Plaintiffs first assert that the trial court was guilty of clear error in refusing to certify, at least on a preliminary and conditional basis, that all of the unit owners in Villa Sierra constitute a proper class under C.R.C.P. 23. Under the circumstances disclosed by this record, we agree.

In order to maintain any type of class action, the requirements of C.R.C.P. 23(a) must be met. These requirements are that (1) the members of the class are so numerous as to make their joinder impracticable, (2) there are questions of law or fact common to the members, (3) the claims or defenses asserted by the parties are typical of the claims or defenses of the other class members, and (4) the parties seeking to represent the class will fairly and adequately protect the members' interests.

Plaintiffs' evidence demonstrated that all of the conditions of C.R.C.P. 23(a) exist, and defendants do not seriously dispute that proposition. Not only do the members of the class exceed 200, but the nature of plaintiffs' claims, and the nature of the evidence to be submitted in support of those claims, mandate the conclusion that there are numerous questions both of law and of fact that are common to the class. In addition, the claims asserted are typical of those possessed by other class members. Indeed, the absent unit owners may have a legal interest in the present plaintiffs' claims by virtue of their common ownership of the buildings and other common elements. *See Weng v. Schleiger*, 130 Colo. 90, 273 P.2d 356 (1954) (all persons having ownership interests in property

must be joined in an action to recover for damage to that property).

However, to obtain class-action status, C.R.C.P 23(b) sets forth further requirements to be met, depending upon the nature of the claim being asserted. In order to maintain a class action under C.R.C.P. 23(b)(1), it must be demonstrated either that individual adjudications would create incompatible standards of conduct for the party opposing the class or would dispose of the interests of absent individuals or impair or impede their ability to protect that interest. Under C.R.C.P. 23(b)(3), it must appear that common questions of law or fact predominate over any questions affecting only individual members and that a class action is superior to any other available method of adjudicating the controversy.

Defendants direct their argument to these requirements, asserting that this is not an action to which C.R.C.P. 23(b)(1) applies and that the conditions prescribed by C.R.C.P. 23(b)(3) cannot be met because the issues that are common to the class members do not predominate over issues relating only to individual members. Because we conclude that this record requires class certification under C.R.C.P. 23(b)(3), we do not address defendants' assertion that C.R.C.P. 23(b)(1) is inapplicable to this action.

The burden of demonstrating that a class should be certified rests upon the class action advocate. *Kniffin v. Colorado Western Development Co.*, 622 P.2d 586 (Colo.App.1980) (no proof of size of class); *Levine v. Empire Savings & Loan Ass'n*, 197 Colo. 293, 592 P.2d 410 (1979) (pleadings not sufficient to demonstrate propriety of class action and plaintiffs had no right to an evidentiary hearing on issue). And, a trial court's decision whether a class is to be certified will be upheld unless that decision is "clearly erroneous." *Friends of Chamber Music v. Denver*, 696 P.2d 309 (Colo.1985).

However, the determination of an action's class status may require more than a review of the pleadings; its resolution may well demand consideration of the na-

ture of the evidence that will be presented. Thus, it is generally better practice for a trial court to hold an evidentiary hearing upon the question of class certification. *See Levine v. Empire Savings & Loan Ass'n, supra.*

Here, defendants assert that the nature both of plaintiffs' claims and of their defenses make clear that the issues affecting only individual class members predominate over any questions that are common to the class. We disagree.

■ A "predominant" issue need not be one that is determinative of a defendant's liability. Rather, "[w]hen one or more of the central issues in the action are common to the class and can be said to predominate, the action is proper under 23(b)(3), even though other matters will have to be tried separately. Thus, resolution of common issues need not guarantee a conclusive finding on liability." *School Asbestos Litigation,* 789 F.2d 996 (3rd Cir.1986). *Accord Sterling v. Velsicol Chemical Corp.,* 855 F.2d 1188 (6th Cir.1988) (suit by nearby landowners and residents against a landfill operator for water pollution). *See also* 3B *Moore's Federal Practice* § 23.45[2] (1987).

■ Plaintiffs' complaint is based upon three alternate legal theories: breach of warranty, negligence, and fraud. And, while the underlying *legal* theories of breach of warranty and negligence may not be uniformly applicable to all of the class members, *see Cosmopolitan Homes, Inc. v. Weller,* 663 P.2d 1041 (Colo.1983), the *factual* issues relating to the nature of the engineer's recommendation, the defendants' actions in response to those recommendations, the damage, if any, to the building and other common elements resulting from those actions, and the nature and cost of the steps now required to rectify that damage, are all questions that are common to each claim. The distinction between the two legal theories will be, at least from an evidentiary standpoint, of little moment. *See Cosmopolitan Homes, Inc. v. Weller, supra.*

Further, C.R.C.P. 23(c) and (d) grant to a trial court substantial discretion to create subclasses with respect to separate issues or to enter other orders designed to manage the litigation. *See Gorin v. Arizona Columbine Ranch, Inc.,* 34 Colo.App. 405, 527 P.2d 899 (1974). Thus, to the extent that the fraud claim alleged by plaintiffs may be asserted only by those unit owners to whom a specific representation was made, the court, after receipt of evidence upon the matter, may either refuse class action treatment with respect to this claim or create a separate class for its assertion, depending upon the nature of any alleged representation and the number of present unit owners to whom it was allegedly made. *See Elk River Associates v. Huskin,* 691 P.2d 1148 (Colo.App.1984).

However, since the over-all class consists of more than 200 members, it is not critical at this early stage in the litigation to determine the precise manner in which this fraud claim will be managed. *Cf. Borwick v. Bober,* 34 Colo.App. 423, 529 P.2d 1351 (1974) (where only claim is based on fraud and plaintiff failed to demonstrate number of persons to whom representation was made, there was no proof of the numerosity requirement of 23(a)(1)).

■ Thus, if the trial court's decision was based upon its conclusion that the claims asserted by plaintiffs were not appropriate for class action treatment under C.R.C.P. 23(b)(3), that conclusion was clearly erroneous. Its decision was likewise erroneous if it was based upon the premise that the issues raised by the defendants' affirmative defenses made class certification improper.

Defendants affirmatively alleged that plaintiffs' claims were barred by the statute of limitations, § 13–80–127, C.R.S. (since repealed and re-enacted with amendments as § 13–80–104, C.R.S. (1987 Repl. Vol. 6A)), and that plaintiffs were themselves contributorily negligent to such an extent that they cannot recover against defendants. They assert that the issues raised by these defenses are individual, not common, issues and that these issues predominate over any common issues. Again, we disagree.

With respect to the statute of limitations defense, defendants produced correspondence to and from the association that was designed to prove that agents of the *association* had knowledge, as early as the spring of 1984, of the water existing in the crawl spaces of the buildings and of an engineer's recommendations for corrections. In addition, they assert, without any evidence upon the point, that at least one phase of the Villa Sierra project had been completed more than ten years before this litigation was initiated.

The pertinent statute, § 13–80–127, C.R.S., contained both a two-year statute of limitations and a ten-year statute of repose. The limitations period began to run from the date that the claim for relief arose, while the repose period commenced from the date of "substantial completion" of the improvement.

It may be arguable that discovery of the damage resulting from a construction defect caused a claim for relief to arise under § 13–80–127 prior to its 1979 amendment (1979 Colo.Sess.Laws at 631), *see Greene v. Green Acres Construction Co.,* 36 Colo. App. 439, 543 P.2d 108 (1975), while knowledge of the nature of the defect itself was required after this amendment. *See Criswell v. M.J. Brock & Sons, Inc.,* 681 P.2d 495 (Colo.1984). Nevertheless, absent actual knowledge, it was, in either case, the "reasonable person" standard that was to be applied in determining the existence of the requisite constructive knowledge. *See Criswell v. M.J. Brock & Sons, Inc., supra.*

Here, the only evidence that defendants have referred to in support of their defense based upon the statute of limitations is the correspondence involving the association. However, if defendants claim that knowledge of the agents of the association is to be imputed to all unit owners, the issue will be one that is common to all of the class members, not one that would affect only individuals. Contrariwise, if knowledge of this correspondence is not to be imputed to all unit owners, and such knowledge is attributable only to the correspondents, few individuals would be affected by this evidence, and the issue can hardly be said to be a predominant one.

■ Likewise, if the Villa Sierra project, or any part of it, was substantially completed more than ten years before the commencement of this action, the issue of the passing of the repose period will be one that is common to all of the class members owning units within that part of the project; it will not be an issue that would affect only an individual class member. Thus, while the existence of such an issue might justify the creation of a sub-class under C.R.C.P. 23(c), it would not constitute a predominant *individual* issue.

■ Defendants have presented no description of the nature of the evidence upon which they intend to rely in asserting the defense of contributory negligence. While we recognize that plaintiffs have the burden of demonstrating the propriety of a class action, *Kniffin v. Colorado Western Development Co., supra,* if, as they have done, plaintiffs make an initial demonstration that a class action is appropriate under C.R.C.P. 23(b)(3), then defendants cannot rely only upon the general allegations of a pleading to argue that common issues do not predominate over individual ones. They must, at the least, describe in some detail the nature of the evidence that they intend to produce upon the issue, so that the court may render an informed judgment upon the predominance of common legal or factual issues over individual ones.

Defendants here failed to produce either any evidence in support of their allegation of negligence or any description of the nature of that evidence. Thus, considering the evidentiary materials submitted to it, we conclude that there simply was no basis for the trial court's determination, even if we assume that it concluded that individual issues predominate over common class issues.

Finally, defendants do not seriously contend that there are procedures superior to a class action by which an adjudication of all of the class members' claims can be obtained. *See* C.R.C.P. 23(b)(3). Indeed, in view of their assertion that the association has no standing to assert the class mem-

bers' claims, the other only available procedure would be separate lawsuits by more than 200 unit owners, or their voluntary or involuntary joinder. We do not consider either approach to be a superior method to adjudicate these claims.

We conclude, therefore, that the trial court committed clear error in denying class action status for plaintiffs' claims. Thus, the matter will be remanded to that court with directions to certify a class consisting of all present unit owners and to give notice to class members in accordance with C.R.C.P. 23(c). Such certification and notice, however, shall be subject to the right of the trial court to redefine the class, to create subclasses, and to enter other appropriate orders respecting the trial of this cause at any time prior to the entry of a final judgment, as the evidence or later developments might warrant. *See* C.R.C.P 23(c) and (d); *Elk River Associates v. Huskin, supra; Gorin v. Arizona Columbine Ranch, Inc., supra.*

## II.

■ In dismissing the association as a party, we presume that the trial court acted in reliance upon this court's opinion in *Summerhouse Condominium Ass'n v. Majestic Savings & Loan Ass'n,* 44 Colo. App. 495, 615 P.2d 71 (1980). Plaintiffs, however, urge us not to apply the *Summerhouse* rule in this case. We agree that that rule is not applicable to the circumstances portrayed by this record.

In *Summerhouse,* a condominium association instituted suit for damages against the condominium developer, alleging that the developer had breached the provisions of the contracts of sale between it and the various unit owners, that it had breached the implied warranty of habitability inhering in such contracts, and that it had violated certain fiduciary duties owed to the unit owners. The association did not seek to have its action certified as a class action, although it sought monetary damages on behalf of its members.

In affirming the dismissal of the association's complaint for lack of standing, this court noted that any contractual or fiduciary obligations were owed to the unit owners, not to the association. Further, we concluded that the pertinent condominium declaration and association by-laws did not grant the association the authority to enforce these obligations on behalf of its members.

However, after *Summerhouse* was decided, this court rendered its opinion in *Conestoga Pines Homeowners' Ass'n v. Black,* 689 P.2d 1176 (Colo.App.1984), in which we expressly adopted the test for standing of a voluntary association that was enunciated in *Hunt v. Washington State Apple Advertising Commission,* 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977) and *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). Under this test, such an association may maintain an action on behalf of its members if (1) its members would otherwise have standing to sue in their own right, (2) the interests sought to be protected are germane to the association's purpose, and (3) neither the claim asserted, nor the relief requested, requires the participation of individual members in the litigation.

Here, there is no question but that the individual unit owners would themselves have standing to prosecute the claims asserted. *See Cosmopolitan Homes, Inc. v. Weller, supra.* Further, given the association's general purpose to foster and promote the interests of the unit owners, this litigation is certainly germane to that purpose.

As to the third part of the test, while an association may generally obtain declaratory or injunctive relief without joining its members, any litigation designed to obtain damages on their behalf would normally require the members' presence. *See Warth v. Seldin, supra. See also Weng v. Schleiger, supra.* In this case, however, the damages sought to be recovered are not damages sustained by any individual. To the extent that any damage has been incurred, it has resulted from injury to the property in which all of the unit owners have a common interest.

Further, we have concluded that this action should proceed as a class action. Thus, all unit owners will have an opportunity to appear in this action, at least through their class representatives.

Under these circumstances, we conclude that the *Conestoga* test provides standing for the association to represent its members as a representative under C.R.C.P. 23(a) and (b)(3), at least if, as is the case here, one or more other class members are also to serve as class representatives. *See Lash v. Lion Property Corp.,* 128 Cal. App.3d 925, 180 Cal.Rptr. 722 (1982); *Deal v. 999 Lakeshore Ass'n,* 94 Nev. 301, 579 P.2d 775 (1978).

Such conclusion, however, does not preclude an inquiry into the adequacy of the association's representation under C.R.C.P. 23(a)(4). *See International Molders' & Allied Workers', Local Union No. 164 v. Nelson,* 102 F.R.D. 457 (N.D. Calif.1983).

The judgment of the district court is reversed, and the cause is remanded to that court for further proceedings consistent with the views and directions contained herein.

HUME and NEY, JJ., concur.