Penelope **TOOTHMAN**, **Robert Mosbarger, and Marvin Nevonen**, on behalf of themselves and all others similarly situated, Plaintiffs–Appellants,

v.

**FREEBORN & PETERS** and **Lawson M. Kerster**, Defendants–Appellees.

No. 01CA1142.

Colorado Court of Appeals, Div. II.

Nov. 21, 2002.

Certiorari Denied Oct. 15, 2003.

---

§ 24–51–1105, C.R.S.2002.

Dyer & Shuman, LLP, Robert J. Dyer, III, Jeffrey A. Berens, Denver, Colorado; Mower & Carreon, Jon R. Mower, Irvine, California, for Plaintiffs–Appellants.

Gersh & Helfrich, LLP, Miles M. Gersh, James S. Helfrich, Denver, Colorado; Hall & Evans, LLC, Daniel R. Satriana, Jr., John E. Bolmer, II, Denver, Colorado, for Defendant–Appellee Freeborn & Peters.

Lawson M. Kerster, Pro Se.

Ken Salazar, Attorney General, Gerald R. Rome, Assistant Attorney General, Denver, Colorado, for Amicus Curiae Securities Commissioner for the State of Colorado.

Brega & Winters, P.C., Lee Katherine Goldstein, Denver, Colorado, for Amicus Curiae Business Law Section of the Colorado Bar Association.

Opinion by Judge PIERCE *

Plaintiffs, Penelope Toothman, Robert Mosbarger, and Marvin Nevonen, appeal a trial court order denying their request for class certification pursuant to C.R.C.P. 23. We reverse and remand with directions.

Plaintiffs sued numerous defendants, including Lawson M. Kerster and Freeborn & Peters (the law firm), asserting violations of the Colorado Securities Act, § 11–51–101, et seq., C.R.S.2002; the Colorado Consumer Protection Act, § 6–1–101, et seq., C.R.S. 2002; and the Colorado Organized Crime Control Act, § 18–17–101, et seq., C.R.S. 2002, as well as common law claims for damages.

In the underlying suit, plaintiffs alleged that numerous defendants, with the intent to defraud investors, organized, promoted, and sold interests in fifty-three limited liability partnerships (LLPs) established to sell prepaid cellular phone services. The interests were sold, via phone solicitation, to approximately 5,000 investors.

After several partial class action settlements were reached, in which the trial court certified settlement classes of investors as to the claims against certain defendants, plain-

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2002.

tiffs sought class certification of their claims against the remaining defendants—Kerster and the law firm.

In their motion for class certification, plaintiffs defined the putative class as:

All persons who purchased or otherwise acquired limited liability "partnership interests" in Colorado limited liability partnerships in which [the two corporate general partners] served as corporate partner.

. . . .

Excluded from the Class are plaintiffs' counsel, all past and present defendants in this action, any subsidiaries or affiliates of the past and present defendant companies, and members of the immediate families of past and present defendants.

Excluded from the Class shall also be those persons and entities who file a valid request for exclusion.

In support of their request for class certification, plaintiffs first argued that the common questions of law and fact included, but were not limited to: whether defendants engaged in the conduct complained of; whether the interests at issues here are "securities" under the Colorado Securities Act; whether the law firm drafted the relevant offering documents and whether those documents contained material misrepresentations or omissions; whether defendants participated in or aided and abetted Colorado Securities Act violations; whether and how much the class members were damaged; and whether the class is entitled to punitive damages.

Plaintiffs further asserted that because they alleged "a common course of conduct involving, for example, misleading form offering documents and breach of fiduciary duties affecting each and every putative class member," and the ultimate issue of liability is common to the putative class, the common issues predominate over any individual issues.

The trial court denied plaintiffs' motion after extensive briefing and oral arguments, ruling that they had failed to establish that the matter was appropriate for class certification under C.R.C.P. 23(b).

This appeal of the trial court's class certification denial is properly before us for review.

See *Levine v. Empire Sav. & Loan Ass'n*, 192 Colo. 188, 557 P.2d 386 (1976)(dismissal of class action allegation is final order because its legal effect is dismissal of all members of the class other than petitioners).

## I.  Class Certification Law

Initially, we note that when available and applicable, we will rely upon Colorado case law.  When citing cases from other jurisdictions, however, we have selected the authorities that, in our view, represent the better rule of law even where case law to the contrary exists.

■  The certification of a class action is governed by C.R.C.P. 23, and the plaintiffs have the burden of proving compliance with the rule.  *Ammons v. Am. Family Mut. Ins. Co.*, 897 P.2d 860 (Colo.App.1995).

To maintain a class action, a party must first meet the requirements of C.R.C.P. 23(a), that:

(1) The class is so numerous that joinder of all members is impracticable;  (2) there are questions of law or fact common to the class;  (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class;  and (4) the representative parties will fairly and adequately protect the interests of the class.

The law firm and Kerster do not dispute that plaintiffs have satisfied the threshold requirements of C.R.C.P. 23(a).

■  "If the requirements of C.R.C.P. 23(a) are satisfied, an action then may be maintained as a class action only if it meets the additional requirements of one of the three subsections of [C.R.C.P.] 23(b)."  *State v. Buckley Powder Co.*, 945 P.2d 841, 844 (Colo. 1997).

As applicable here, the relevant subsection requires:

that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controver-

sy. The matters pertinent to the findings include:

(A) The interest of members of the class in individually controlling the prosecution or defense of separate actions;

(B) The extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

(C) The desirability or undesirability of concentrating the litigation of the claims in the particular forum;

(D) The difficulties likely to be encountered in the management of [a] class action.

C.R.C.P. 23(b)(3).

■ "[W]hen one or more of the central issues in the action are common to the class and can be said to predominate, the action is proper under [C.R.C.P.] 23(b)(3), even though other matters will have to be tried separately." *Villa Sierra Condo. Ass'n v. Field Corp.*, 787 P.2d 661, 665 (Colo.App.1990)(quoting *In re Sch. Asbestos Litig.*, 789 F.2d 996 (3d Cir.1986)).

■ "The decision of whether to certify a class action lies within the discretion of the trial court and will not be disturbed unless the decision is clearly erroneous and an abuse of discretion." *Friends of Chamber Music v. City & County of Denver*, 696 P.2d 309, 317 (Colo.1985); *Livingston v. United States Bank*, 58 P.3d 1088, 2002 WL 927068 (Colo.App. No. 01CA0605, May 9, 2002). An abuse of discretion includes an erroneous application of the law. *See, e.g., Kuhn v. State*, 817 P.2d 101 (Colo.1991).

■ Because C.R.C.P. 23 is virtually identical to Fed.R.Civ.P. 23, we look to case law regarding the federal rule for guidance. *See State v. Buckley Powder Co., supra.* Furthermore, class treatment is particularly appropriate for proceedings involving alleged violations of securities laws, and Fed.R.Civ.P. 23 should be construed liberally to achieve that end. *Eisenberg v. Gagnon*, 766 F.2d 770 (3d Cir.1985); *Schwartz v. Celestial Seasonings, Inc.*, 178 F.R.D. 545 (D.Colo.1998). That proposition applies equally to C.R.C.P. 23.

## II. Trial Court Ruling

The trial court here ruled that plaintiffs established common questions of law or fact among the 5,000 potential class members. Specifically, the court found that "every member of the class invested in almost identical LLPs, and entered into the transaction using substantially similar partnership agreements."

However, it further found that the common questions do not "predominate over individual questions" under C.R.C.P. 23(b)(3). The court first determined that whether the LLP interests here are "securities" for the purpose of proving securities fraud "requires an analysis of each [individual] investor in relation to each partnership" pursuant to the holding in *Feigin v. Digital Interactive Associates, Inc.*, 987 P.2d 876 (Colo.App.1999) (adopting the rationale of *Williamson v. Tucker*, 645 F.2d 404 (5th Cir.1981)). The court further found that in this case "there is a wide range of investment knowledge and education among the individual investors" and that "each investor completed detailed signature pages informing [him or her] that the LLPs were not securities and required a certain degree of acumen, involvement and sophisticated investor knowledge."

The court also determined that § 13–21–111.5, C.R.S.2002, and *Slack v. Farmers Insurance Exchange*, 5 P.3d 280 (Colo.2000), would require a special verdict apportioning fault among the parties, including the class members and certain nonparties, who may be "found to have contributed to the unsuccessfulness [sic] of the LLPs."

As a result, the court ruled that "given the number of potential class members and the individualized issues relating to whether the partnerships are securities and apportionment of fault, this case would be unwieldy if tried as a class action."

### III. Previous Settlement Class Certifications

■ As a threshold matter, we first reject plaintiffs' contention that the trial court's prior class certifications, related to the settlements with other defendants, require that the class here must be certified. Because

neither Kerster nor the law firm objected to the prior partial class certifications, plaintiffs assert that the trial court erred in failing to certify the identical claims against Kerster and the law firm.

We disagree with their assertion that the trial court's alleged "failure to consider the previous partial settlements" when considering the class certification determination here was reversible error. In our view, defendants here had little, if any, incentive or opportunity to assert their position against class certification, as to the particular claims against them, in the prior class certifications related to the settlement with other defendants. Under the facts of this case, in which the prior class certifications related to other defendants, we rule that the prior partial certifications are not determinative of the certification at issue here. *See In re GMC Pick–Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 796 (3d Cir.1995)("the settlement approval inquiry is far different from the certification inquiry"). *But see Steiner v. Ideal Basic Indus., Inc.*, 127 F.R.D. 192 (D.Colo.1987)(noting that the case had been handled in part as a class action because of a prior partial settlement).

Furthermore, we reject plaintiffs' argument to the extent that it is based on *Amchem Products v. Windsor*, 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). In *Amchem*, the plaintiffs obtained certification for the purposes of a global settlement of claims against the manufacturers by persons exposed to asbestos. The *Amchem* Court decertified the class, however, and ruled that trial courts must evaluate fully whether a settlement-only class is properly certifiable under Fed.R.Civ.P. 23, except for the issue of trial manageability, and may not just apply the fairness requirement of Fed.R.Civ.P. 23(e).

Contrary to plaintiffs' argument, *Amchem* does not hold that a previous class action certification is determinative of a subsequent certification request. Plaintiffs have not referred us to any authority, nor have we found any, for the proposition that a court is required to certify a class for claims that had been previously certified in a partial settlement context against other settling defendants.

Furthermore, because the determination whether the individual questions predominate over the common ones is, under these facts, a litigation management problem, we conclude that the trial court's prior class certifications do not control the certification determination here. *See Amchem Prods. v. Windsor, supra*, 521 U.S. at 620, 117 S.Ct. at 2248, 138 L.Ed.2d at 710 (acknowledging that in a settlement certification, the court "need not inquire whether the case, if tried, would present intractable management problems").

Additionally, a review of the record reveals that when certifying the partial settlement classes, the trial court either made no C.R.C.P. 23 findings or did so only in a cursory fashion. Instead, it is clear that the emphasis of the three prior settlement certification orders was on the fairness of the settlements, not the appropriateness of class certification. This focus is evidenced in part by the trial court's use of limiting language when certifying the prior settlement classes. For example, when granting preliminary approval of the settlement class for the claims against the corporate partners, the court approved the class to proceed as a class action, pursuant to C.R.C.P. 23, "only for the purposes of settlement, and only with respect to the persons subject to the settlement agreement." Similar language was contained in the preliminary approval of the settlements involving the other settling defendants as well.

Therefore, we are not persuaded by plaintiffs' contention that the prior partial class certifications require that the class at issue here be certified.

## IV. Predominance of Common Issues

Plaintiffs' primary contention on appeal is that the trial court abused its discretion when ruling that the class was not appropriate for certification because the questions of law and fact that are common to all members of the class do not predominate over questions affecting the individual class members. Because we conclude that the trial court misapplied the law, we remand for further proceedings.

## A. Securities

In finding that the common questions of law or fact among the potential class members do not predominate over individual questions under C.R.C.P. 23(b)(3), the trial court first ruled that whether the LLP membership interests here are "securities" for the purpose of proving securities fraud requires an analysis of the circumstances of each named plaintiff and all members of the putative class in relation to each partnership. In so holding, the court relied on *Feigin v. Digital Interactive Associates, Inc., supra,* and *Williamson v. Tucker, supra.*

The definition of a "security" in the Colorado Securities Act includes an "investment contract." Section 11–51–201(17), C.R.S. 2002; *see also* 15 U.S.C. § 77b(1) (1970); *Lowery v. Ford Hill Inv. Co.,* 192 Colo. 125, 556 P.2d 1201 (1976)(federal authorities are highly persuasive when the provisions and purposes of the Colorado Securities Act parallel those of the federal enactments).

Colorado courts have adopted the federal test set forth in *Securities & Exchange Commission v. W.J. Howey Co.,* 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946), as modified by *United Housing Foundation, Inc. v. Forman,* 421 U.S. 837, 95 S.Ct. 2051, 44 L.Ed.2d 621 (1975), to determine whether an interest in an enterprise is an investment contract. *See Lowery v. Ford Hill Inv. Co., supra; Sauer v. Hays,* 36 Colo.App. 190, 539 P.2d 1343 (1975).

■ Under that test, an "investment contract" is: (1) a contract, transaction, or scheme whereby a person invests his or her money (2) in a common enterprise and (3) is led to expect profits derived from the entrepreneurial or managerial efforts of others. *People v. Milne,* 690 P.2d 829 (Colo.1984).

■ An investment contract "embodies a flexible rather than a static principle, one that is capable of adaptation to meet the countless and variable schemes devised by those who seek the use of the money of others on the promise of profits." *SEC v. W.J. Howey Co., supra,* 328 U.S. at 299, 66 S.Ct. at 1103, 90 L.Ed. at 1250. Courts should "consider whether, under all the circumstances, the scheme was being promoted primarily as an investment or as a means whereby participants could pool their own activities, their money and the promoter's contribution." *SEC v. Aqua–Sonic Prods. Corp.,* 687 F.2d 577, 582 (2d Cir.1982). State and federal securities regulation requires "a substantive appraisal of the commercial realities of the offering." *Lowery v. Ford Hill Inv. Co., supra,* 192 Colo. at 130, 556 P.2d at 1205.

The issue of whether the LLP membership interests here constitute "securities" involves determinations of issues of fact and law. *See Joseph v. Viatica Mgmt., LLC,* 55 P.3d 264 (Colo.App.2002)(whether an interest is an investment contract and therefore a security, in the context of a summary judgment determination, is a question of law to be reviewed de novo); *Ak's Daks Communications v. Md. Secs. Div.,* 138 Md.App. 314, 329, 771 A.2d 487, 496 (2001)("[t]he cases take a fact-driven approach to determining whether managerial efforts by those other than the investor are the significant efforts"). Findings of fact are generally reviewed under a clear error or abuse of discretion standard, whereas conclusions of law are generally reviewed under a de novo standard. *See generally E–470 Pub. Highway Auth. v. 455 Co.,* 3 P.3d 18 (Colo. 2000).

### 1.

■ As an initial matter, we hold that the presumption that a general partnership interest is not a security, as set forth in *Williamson v. Tucker, supra,* is not applicable to an LLP interest in Colorado.

■ Because general partners have a legal right to participate in the management of the partnership, an interest in a general partnership is presumed not to be an investment contract. *See Williamson v. Tucker, supra,* 645 F.2d at 421; *Ak's Daks Communications v. Md. Secs. Div., supra.*

To overcome the presumption that a general partnership interest is not a security, a division of this court has adopted the test articulated in *Williamson v. Tucker, supra,* to determine whether an interest in an entity denominated a general partnership is, in fact, an investment contract for the purpose of

enforcement of the Colorado Securities Act. *Feigin v. Digital Interactive Assocs., Inc., supra.* Under that test, "an investor must demonstrate that, in spite of the partnership form which the investment took, he was so dependent on the promoter or on a third party that he was in fact unable to exercise meaningful partnership powers." *Williamson v. Tucker, supra,* 645 F.2d at 424 (providing three examples of general partnership interests that could be designated a security).

Colorado courts have not addressed whether the rationale of *Williamson* applies to an LLP membership interest. We conclude that it is not applicable.

A general partnership provides its partners with an equal right in the management and conduct of the partnership business, and general partners are jointly and severally liable for the obligations of the general partnership. *See* §§ 7–60–115(1), 7–60–118(1), C.R.S.2002. The *Williamson* ruling adheres to these principles in that a partnership interest is presumed not to be an investment contract to the extent that partners have a legal right to participate in the management of the partnership. *See Great Lakes Chem. Corp. v. Monsanto Co.,* 96 F.Supp.2d 376, 391 (D.Del.2000)(courts generally find general partnership interests are not securities because general "partners have equal rights in the management ... and because they are not protected by limited liability, courts consistently state that partners in general partnerships are unlikely to be passive investors who profit solely on the efforts of others").

■ In contrast, the limited partners in a typical limited partnership are not directly involved in managing the affairs of the partnership, and limited partners are not personally liable for the obligations of the partnership unless they participate in the control of the business. *See* §§ 7–61–110, 7–62–301, C.R.S.2002 (providing that general partners retain the control and management of a limited partnership); *see also* §§ 7–61–108, 7–62–303(1), C.R.S.2002. Thus, the *Williamson* presumption is generally not applicable to limited partners because they are more like passive investors. *See Great Lakes Chem. Corp. v. Monsanto Co., supra,* 96 F.Supp.2d at 391 (where limited partners "exercised no

managerial role in the partnership's affairs, courts treat the limited partners as passive investors, and find that the membership interests of limited partners constitute securities under federal law").

Membership interests in LLPs, as relevant here, cannot be analogized to either general partnership interests or limited partnership interests. Because LLPs are a form of general partnership, *see* §§ 7–64–1002, 7–64–1205(b), C.R.S.2002, their members are permitted to participate in the control and management of the business of the LLP. *See* §§ 7–60–118(1), 7–64–401(6). However, LLP members—as opposed to general partners—are entitled to the protections of limited liability. *See* §§ 7–60–115(2), 7–64–306(3), C.R.S.2002. In some instances, as a matter of express or implied agreement, or as practical matter, the LLP members may have very limited or no control in the management of the LLP.

Our research has not revealed a case extending the *Williamson* presumption to LLP membership interests. *See* Elaine A. Welle, *When Are Limited Liability Partnership Interests Securities?,* 27 Iowa J. Corp. L. 63 (2001)(finding no reported cases expressly addressing the treatment of LLP interests under securities laws, but noting that enforcement actions demonstrate that the conventional wisdom that LLP interests are not securities is inaccurate).

■ As a result, we conclude that the structure of a Colorado LLP does not lead to a presumption that LLP membership interests are not securities. Instead, we are persuaded by the rationale courts have used when assessing whether interests in limited liability companies (LLCs) are securities. *See* §§ 7–80–607, 7–80–705, C.R.S.2002.

In *Great Lakes Chemical Corp. v. Monsanto Co., supra,* the court ruled that because members of LLCs are entitled to limited liability, and, depending on the terms of the agreement giving rise to the particular LLC, the members of the LLC may have very limited involvement in the management of the enterprise, the presumptions that courts have articulated with respect to general partners and limited partners do not ap-

ply. "Rather, to determine whether a member's profits are to come solely from the efforts of others, it is necessary to consider the structure of the particular LLC. . . ." *Great Lakes Chem. Corp. v. Monsanto Co., supra,* 96 F.Supp.2d at 391; *see also* Welle, *supra,* 27 Iowa J. Corp. L. at 66 "The characteristics and organizational structure of each LLP will determine whether the interest at issue is a security.". *See, e.g., Nutek Info. Sys., Inc. v. Ariz. Corp. Comm'n,* 194 Ariz. 104, 977 P.2d 826 (Ct.App.1998)(declining to extend the *Williamson* presumption to limited liability companies); *Ak's Daks Communications v. Md. Secs. Div., supra* (same).

Thus, we conclude that when applying the principle espoused in *W.J. Howey* to Colorado LLP membership interests, the *Williamson* presumption is not applicable. As a result, we also conclude that the trial court misconstrued the applicable law when it used examples set forth in *Feigin v. Digital Interactive Associates, Inc., supra,* and *Williamson v. Tucker, supra,* to determine whether the interests here were securities for the purpose of assessing whether the individual questions predominate over the common ones for class certification.

### 2.

Because partnership interests typically embody an investment in a common enterprise for profit, the pivotal issue is often, as it is here, the third requirement of an investment contract—whether the investor expects profits from the managerial efforts of someone else. *See, e.g., Joseph v. Viatica Mgmt., LLC, supra.*

In *Sauer v. Hays, supra,* a division of this court adopted the construction developed in *Securities & Exchange Commission v. Glenn W. Turner Enterprises, Inc.,* 348 F.Supp. 766 (D.Or.1972), *aff'd,* 474 F.2d 476 (9th Cir. 1973), which determined that the managerial efforts of others must be "the undeniably significant ones, those essential managerial efforts which affect the success or failure of the enterprise." *Sauer v. Hays, supra,* 36 Colo.App. at 196, 539 P.2d at 1347; *see also Lowery v. Ford Hill Inv. Co., supra; People*

*v. Campbell,* 58 P.3d 1148, 2002 WL 31119854 (Colo.App. No. 00CA1111, Sept. 26, 2002).

The Colorado Supreme Court stated that the emphasis is "on whether or not the investor has substantial power to affect the success of the enterprise." *People v. Blair,* 195 Colo. 462, 473, 579 P.2d 1133, 1141–42 (1978)(quoting *SEC v. Heritage Trust Co.,* 402 F.Supp. 744 (D.Ariz.1975)). *See, e.g., SEC v. Friendly Power Co. LLC,* 49 F.Supp.2d 1363 (S.D.Fla.1999).

Finally, in *Feigin v. Digital Interactive Associates, Inc., supra,* it was determined that the securities commissioner's search warrant affidavit was sufficient to state probable cause that the general partnership interests being sold by the defendants constituted "investment contracts." In reaching this conclusion, the court looked at the target marketing of the sales, the management structure and experience, the potential number of investors in each partnership, the emphasis on the management committee's expertise in the documentation, and the general demographics of the investors. *Feigin v. Digital Interactive Assocs., Inc., supra; see also Williamson v. Tucker, supra,* 645 F.2d at 423 (an arrangement in which the general partnership interests place the control in the managing partners, or where the interests were sold to a large number of the general public so that each partner's role was comparable to that of a single shareholder in a corporation, "might well constitute an investment contract").

Thus, we conclude that the relevant inquiry for the trial court here was not to apply the *Williamson* examples related to general partnership interests, but rather, to determine whether the investors expected profits from the managerial efforts—those essential efforts that affect the failure or success of the enterprise—of someone else, and whether the investors had substantial power to affect the success of the enterprise. *See, e.g., Teague v. Bakker,* 35 F.3d 978 (4th Cir.1994).

### 3.

To that end, plaintiffs contend they have presented classwide evidence that the LLP

interests here are "securities," thus eliminating individual questions on this issue for the purpose of class certification. We agree in part.

We are aware of only one class certification case in which the underlying issue was whether the plaintiffs' interests were securities. In *Westlake v. Abrams*, 565 F.Supp. 1330 (N.D.Ga.1983), the plaintiffs argued that their *commodity futures* options were securities. The trial court first denied summary judgment because questions of material fact remained as to whether the options were securities. With regard to class certification, the trial court initially denied class certification of the plaintiffs' claims based on the Securities Act of 1933, 15 U.S.C. § 77(a), et seq., and the Securities Exchange Act of 1934, 15 U.S.C. § 78(a), et seq., ruling that the individual questions predominated because the individual investor's reliance on any misrepresentations would have to be proved. However, upon reconsideration, the court certified the class because the "focus of the factual inquiry has now shifted from developing what representations were made by [defendants] to the individual investors to developing the facts with regard to the alleged common investment scheme." *Westlake v. Abrams, supra*, 565 F.Supp. at 1343.

Following this reasoning, we agree that to the extent plaintiffs' case rests on a claim that Kerster and the law firm created a common investment scheme, this common issue is likely to predominate over individual ones, such as the characteristics or capabilities of the individual investors.

## B. Apportionment of Damages

We next address plaintiffs' contention the trial court erred when it ruled that issues of individual apportionment of damages outweigh the common issues. We again agree that the trial court misconstrued the law.

### 1.

Plaintiffs first assert the trial court erred in ruling that fault would have to be apportioned among the law firm, Kerster, and the settling defendants. We conclude that apportionment is not required because plaintiffs' claims are premised on a theory of concerted activity.

Section 13–21–111.5(1), C.R.S.2002, provides that "In an action brought as a result of ... an injury to ... property, no defendant shall be liable for an amount greater than that represented by the ... percentage of the negligence or fault attributable to such defendant that produced the claimed injury...."

Section 13–21–111.5(4), C.R.S.2002, provides an exception to § 13–21–111.5(1) by allowing the imposition of joint liability among tortfeasors when "two or more persons ... consciously conspire and deliberately pursue a common plan or design to commit a tortious act."

The law firm and Kerster argue that plaintiffs cannot now assert joint liability under the conspiracy exception because the trial court determined, in a prior ruling, that plaintiffs' settlements with the other defendants destroyed any joint liability. Specifically, they refer to the court's ruling, made in response to the law firm's motion seeking a determination of law on the issue, that "plaintiffs' aggregate claim in this case will be reduced based on the fault of the settling tortfeasors." Because plaintiffs did not ask that the trial court certify this ruling as final under C.R.C.P. 54(b), the law firm and Kerster contend that plaintiffs have not preserved this issue for appeal. We are not convinced.

In the order on appeal here, the trial court ruled that a special verdict may be required, under § 13–21–111.5, "apportioning fault between the parties and certain nonparties." Because this order is premised on the court's prior ruling that plaintiffs' claims would have to be reduced based on the percentage of fault of the settling defendants, we conclude the ruling is reviewable here. In our view, the prior ruling was subsumed by the court's later denial of the class certification request at issue here.

On appeal, plaintiffs assert that their claims are based on an allegation of conspiracy. As such, they maintain that § 13–21–111.5(4) excepts their claims from the primary requirement in the pro rata statute,

§ 13–21–111.5(1), that a defendant is only liable for the percentage of fault attributable to it.

In response, Kerster refers us to the Uniform Contribution Among Tortfeasors Act, which provides that a settlement release given in good faith to persons liable in tort for the same injury

> does not discharge any of the other tortfeasors from liability for their several pro rata shares of liability for the injury ... but it reduces the aggregate claim against the others to the extent of any degree or percentage of fault or negligence attributable by the finder of fact, pursuant to ... section 13–21–111.5 to the tortfeasor to whom ... the release is given.

Section 13–50.5–105(1)(a), C.R.S.2002. Kerster argues that the plain terms of that statute require a reduction of the aggregate claim by a percentage of the fault attributable to the settling defendant "pursuant to section 13–21–111.5." He also refers us to *Smith v. Zufelt*, 880 P.2d 1178, 1188 (Colo. 1994), in which the Colorado Supreme Court ruled that "in all instances in which a settlement agreement is reached with one or more parties in order to avoid exposure to liability at trial ... the trial verdict shall be reduced by an amount equal to the cumulative percentage of fault attributed to the settling nonparties."

However, the court in *Smith v. Zufelt* specifically noted the conspiracy exception in § 13–21–111.5(4), allowing for joint and several liability. *Smith v. Zufelt, supra,* 880 P.2d at 1181 n. 5.

In *Pierce v. Wiglesworth*, 903 P.2d 656, 658 (Colo.App.1994), a division of this court ruled that the exception in § 13–21–111.5(4) "authorizes the imposition of liability upon a defendant for the fault of *all* other joint tortfeasors, regardless of whether they have settled with the plaintiff." Because the settlement provision in § 13–50.5–105 requires a plaintiff to bear the loss when the amount of settlement is less than the settling defendants' proportionate share of the damages, the joint and several liability provision of § 13–21–111.5 controls in those circumstances. *Pierce v. Wiglesworth, supra.*

We conclude that the reasoning and ruling in *Pierce v. Wiglesworth, supra,* are applicable here. Therefore, because plaintiffs alleged that the law firm, Kerster, and the settling defendants acted in concert with each other, if plaintiffs prevail on the merits, the law firm and Kerster would be jointly liable for the settling defendants' percentage of the award not covered by the settlement proceeds. *See Resolution Trust Corp. v. Heiserman,* 898 P.2d 1049, 1057 (Colo. 1995)(the evidence must prove that the defendants consciously conspired and deliberately pursued a common plan or design that resulted in a tortious act); *Freyer v. Albin,* 5 P.3d 329 (Colo.App.1999).

2.

Plaintiffs also assert that the trial court erred in ruling that fault would have to be apportioned among the individual class members and the defendants. We agree.

Section 13–21–111.5(2), C.R.S.2002, requires that a jury return a special verdict "determining the percentage of negligence or fault attributable to each of the parties." The trial court found that the named plaintiffs and members of the putative class are a "party" whose "fault" must be assessed pursuant to § 13–21–111.5(2).

The case law interpreting this statute allows the apportionment of damages among the parties, including a plaintiff, when the underlying suit is based on negligence. *See* § 13–21–111, C.R.S.2002 (concerning comparative negligence as a measure of damages); *Inland/Riggle Oil Co. v. Painter,* 925 P.2d 1083 (Colo.1996); *Gen. Elec. Co. v. Niemet,* 866 P.2d 1361, 1366 (Colo.1994)("a trial court must ascertain a plaintiff's and defendants' pro rata liability before it determines the amount of exemplary damages"); *see also* § 13–21–111.5(5), C.R.S.2002 (requiring the trial court to instruct the jury on the effect of its findings as to the percentage of fault "as between the plaintiff or plaintiffs and the defendant or defendants" in a civil action "in which contributory negligence or comparative fault is an issue").

Furthermore, the supreme court has ruled that the pro rata statute requires apportion-

ment of damages among the several defendants even when one of the tortfeasors commits an intentional tort that contributes to an indivisible injury. *Slack v. Farmers Ins. Exch., supra.*

However, we disagree with the trial court's extension of the ruling in *Slack* to mandate apportionment among plaintiffs when the underlying action alleges intentional, as opposed to negligent, conduct by the defendants.

We acknowledge the supreme court's statement that § 13–21–111.5 "does not differentiate between intentional acts and negligent acts in its mandate to apportion liability among tort-feasors." *Slack v. Farmers Ins. Exch., supra,* 5 P.3d at 288. However, nothing in the statute persuades us that the General Assembly intended a plaintiff's fault or degree of culpability to be considered when the defendants are alleged to have committed intentional torts.

Moreover, absent an express mandate by the legislature to do so, we will not abrogate the longstanding Colorado common law rule that a plaintiff's fault may not reduce an intentional tortfeasor's liability. *See White v. Hansen,* 837 P.2d 1229, 1233 n. 6 (Colo. 1992)("it is also well settled that actions founded on intentional misconduct by the defendant were not subject to the defense of contributory negligence and are not subject to comparative fault principles"); *see also Lamp v. Reynolds,* 249 Mich.App. 591, 645 N.W.2d 311 (2002)(recognizing a national split of authority on whether the nature of the defendant's underlying conduct affects the application of comparative fault principles).

Hence, we agree with plaintiffs that the *Slack* ruling related to intentional conduct applies only to another tortfeasor. *See Harvey v. Farmers Ins. Exch.,* 983 P.2d 34 (Colo.App.1998)(actions founded on defendant's intentional misconduct were not subject to the defense of contributory negligence by the plaintiff, or to comparative fault principles, when construing the comparative negligence statute), *aff'd sub nom. Slack v. Farmers Ins. Exch., supra. But see Loughridge v. Goodyear Tire & Rubber Co.,* 207 F.Supp.2d 1187 (D.Colo.2002)(concluding that

pro rata liability applies to a plaintiff's products liability claims, including fraudulent concealment of a product defect and Colorado Consumer Protection Act claims).

We note that other jurisdictions have determined that proportionate fault is not applicable in a securities law context. *See, e.g., In re Atl. Fin. Mgmt., Inc., Sec. Litig.,* 603 F.Supp. 135 (D.Mass.1985); *McCracken v. Edward D. Jones & Co.,* 445 N.W.2d 375 (Iowa Ct.App.1989); *Duperier v. Tex. State Bank,* 28 S.W.3d 740 (Tex.App.2000). *But see Banks v. Yokemick,* 177 F.Supp.2d 239 (S.D.N.Y.2001); *Landry v. Thibaut,* 523 So.2d 1370 (La.Ct.App.1988).

In light of our conclusion that the trial court misapplied the law when ruling that the individual issues in this case predominate over the common ones, we must remand for the trial court to apply the legal conclusions set forth in this opinion.

## V. Partial Certification and Subclasses

█ The law firm contends that because plaintiffs did not request partial certification on some of their claims and did not propose any possible subclasses, they are estopped from seeking partial certification. We disagree.

Our review of the record reveals that although plaintiffs did not formally ask for partial certification in the trial court, plaintiffs' counsel argued, at the class certification hearing, that whether the interests here were securities was a determination that did not apply to the conspiracy and Colorado Organized Crime Control Act claims. Thus, contrary to the law firm's argument, we conclude that the issue was sufficiently raised and preserved for appeal.

█ Moreover, although it is generally the plaintiff's burden to submit a proposal to certify a class as to certain issues in the case, the trial court may also act sua sponte, depending on the circumstances, to create subclasses. *See Goebel v. Colo. Dep't of Insts.,* 764 P.2d 785, 795 (Colo.1988)(ruling that "[t]he court should have used its powers under C.R.C.P. 23(c)(4) to control and shape this action"); *see also Villa Sierra Condo.*

*Ass'n v. Field Corp., supra,* 787 P.2d at 665 ("C.R.C.P.23(c) and (d) grant to a trial court substantial discretion to create subclasses with respect to separate issues or to enter other orders designed to manage the litigation").

Thus, on remand, we direct the trial court to not only apply the legal principles set forth in this opinion to reevaluate whether the individual issues predominate over the common ones, but also to "more carefully assess whether each claim for relief remaining in the case is appropriate for adjudication in a class action and, if so, what categories of persons should make up such a class or subclass." *See Goebel v. Colo. Dep't of Insts., supra,* 764 P.2d at 795.

For example, if the court determines class certification is appropriate, it may create subclasses or modify the class description to include only those investors who did not actively participate in the management of the LLPs. *See Diaz v. Romer,* 961 F.2d 1508 (10th Cir.1992); *Shapiro v. Midwest Rubber Reclaiming Co.,* 626 F.2d 63 (8th Cir.1980)(in a securities class action, the trial court properly restricted the class to those persons whose fact situation mirrored the plaintiff's).

Additionally, the court may also certify a class with regard to the issue of liability or other common issues, or as to some of plaintiffs' claims, while deferring or severing individual issues for later disposition pursuant to C.R.C.P. 23(c)(4). *See generally* 2 Herbert Newberg & Alba Conte, *Newberg on Class Actions* § 7.33 (3d ed.1992)("it is settled that the presence of individual issues among class members will not bar class certification when common issues predominate or when the class action status might be limited to common issues").

Therefore, the order denying class certification is reversed, and the case is remanded for further proceedings consistent with the views expressed in this opinion.

Judge TAUBMAN and Judge DAILEY concur.