**The PEOPLE of the State of Colorado,**
**Plaintiff–Appellee,**

v.

**Robin K. CRUSE, Defendant–Appellant.**

**No. 01CA0086.**

Colorado Court of Appeals,
Div. I.

June 20, 2002.

As Modified on Denial of Rehearing
Aug. 1, 2002.

Ken Salazar, Attorney General, Michelle L. Prince, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Elisabeth Hunt White, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge WEBB.

Defendant, Robin K. Cruse, appeals the judgment of conviction entered upon jury verdicts finding him guilty of unlawfully manufacturing a schedule II controlled substance (methamphetamine and amphetamine), unlawful possession of a schedule II controlled substance (methamphetamine and amphetamine), and possession of drug paraphernalia. Defendant also appeals the sentences imposed in connection with the two controlled substance convictions. We remand for additional findings concerning defendant's motion to suppress and reject defendant's other contentions.

The affidavit supporting the search warrant here at issue included the following information.

Defendant was arrested pursuant to an outstanding arrest warrant in an unrelated case. The arresting officer immediately detected an overwhelming odor on defendant's person that the officer knew to be solely consistent with the manufacture of methamphetamine.

At the detention facility, an investigator examined an article of defendant's clothing

and detected an overwhelming odor that the investigator knew to be solely consistent with the manufacture of methamphetamine. When the investigator met with defendant, the investigator detected this same odor on defendant's person even though defendant had just showered. The investigator noticed that defendant's hands were callused with what appeared to be stain or burn marks. Based on his experience, the investigator recognized these stains and burns as the kind of injuries often caused by the high temperatures and abrasive chemicals used to manufacture methamphetamine.

The investigator also knew that, approximately ten months earlier, a search warrant had been executed at a different address where defendant was then living; a search of the residence had resulted in the discovery of a methamphetamine manufacturing operation; and when interviewed, defendant had admitted participation in methamphetamine manufacturing.

Defendant told the investigator the address of the house where he was living, though he was evasive when asked whether anyone else shared the residence. The investigator left defendant at the detention facility and drove to the address that defendant had provided.

Upon arrival, the investigator and a second officer noticed lights on in the basement. They approached the front door and knocked. No one answered. The officers could detect a faint odor consistent with the production of methamphetamine emanating from the front of the house and on the side of the house near an air cooler. The officers walked past the air cooler on their way to a side basement door. The officers knocked on the basement door. Again, no one answered.

The officers then walked to the rear of the property and entered a structure that the investigator described as a "carport." The investigator observed plastic packaging materials for nasal decongestants on the ground in the garage. The investigator knew that this type of decongestant contained a precursor chemical used in one method of producing methamphetamine and that defendant had previously used this particular method when producing methamphetamine.

A third officer brought a dog onto the property. The dog was trained in the detection of narcotics, including methamphetamine. The dog alerted to the presence of an unknown narcotic odor, although the affidavit does not indicate exactly where this occurred.

Based on this information, a district court judge issued a search warrant for defendant's residence and his automobile. During the execution of that warrant, police officers discovered methamphetamine along with various chemicals and implements used in its manufacture. Based on that evidence, charges were filed against defendant in this case.

Prior to trial, defendant filed a motion to suppress the seized evidence as the fruit of an unlawful search. At a hearing on that motion, most of the factual assertions set forth in the affidavit supporting the search warrant were undisputed.

As to those facts in dispute, the trial court found that the gate located on the side of the house was open when the officers walked through it to knock on the basement door, the officers were able to detect the faint odor of methamphetamine manufacturing before they reached the basement door, and the investigator's description of a "carport" in the warrant affidavit was "extremely misleading" because the structure was actually a garage with an open sliding door.

The trial court then concluded that the police officers were lawfully present at defendant's front door and on the side of the residence leading to the separate entrance for the illuminated basement. The court also concluded that once the officers detected the odor of methamphetamine from these lawful vantage points, the totality of their information constituted probable cause sufficient to authorize the issuance of a search warrant.

The court further concluded that the police officers should have obtained a warrant before subjecting defendant's residence to a dog sniff, they had unlawfully entered the garage, and they had misleadingly described the location where they discovered the decongestant packaging. However, the court

found the dog sniff and the unlawful search of the garage were immaterial because the information from those unlawful searches was not necessary to establish probable cause for the warrant. Accordingly, the trial court denied defendant's motion to suppress.

I.

Defendant first argues that the trial court erred by denying his motion to suppress. We remand for additional findings.

On review of a trial court's suppression order:

a "court's findings of historical fact are entitled to deference by a reviewing court and will not be overturned if supported by competent evidence in the record." In reviewing a court's conclusions of law, however, we apply a de novo standard of review to ascertain whether its legal conclusions are supported by sufficient evidence and whether it has applied the correct standard.

*People v. Ortega*, 34 P.3d 986, 990 (Colo.2001) (citation omitted; quoting *People v. Quezada*, 731 P.2d 730, 732 (Colo.1987)).

Where a suppression claim involves a mixed question of law and fact that cannot be resolved without additional factual findings, the appellate court should remand for further proceedings. *People v. McClure*, 190 Colo. 250, 545 P.2d 1038 (1976).

A.

We begin by analyzing whether the information in the search warrant affidavit, other than the information concerning the dog sniff and the search of the garage, was lawfully obtained. Defendant argues that the information concerning the odor which the officers smelled emanating from his house was unlawfully obtained because the officers invaded an area of his curtilage where he enjoyed a reasonable expectation of privacy. We disagree.

The Fourth Amendment protects against police intrusions that abridge a legitimate expectation of privacy. A legitimate expectation of privacy must be determined after examining all the facts and circum-

stances in a particular case. While the curtilage surrounding a home may be protected under the Fourth Amendment, a search within the curtilage is lawful if the area's public accessibility dispels any reasonable expectation of privacy. *People v. Shorty*, 731 P.2d 679, 681 (Colo.1987).

Here, the record supports the trial court's finding that the gate was open on the side of the house leading to the basement entrance, and the photographs of the basement entrance, admitted as exhibits at the suppression hearing, show that this entrance was in an area held open to the public. Moreover, the fact that basement lights were on, in combination with defendant's evasive response concerning whether he shared the premises with another person, support the trial court's conclusion that the officers had a reasonable basis to walk through the open gate and knock on the basement door.

Thus, we conclude that the officers were in an area where they had a right to be when they smelled the methamphetamine odor. *See People v. Baker*, 813 P.2d 331, 333 (Colo. 1991)(an inquiry regarding the possibility of narcotics offenses is sufficient justification for a police officer to enter the defendant's property and knock on the door); *People v. Shorty, supra*, 731 P.2d at 682 (defendant did not have a reasonable expectation of privacy in the area under a doormat in front of a basement apartment that was seven steps below ground level and had a private entrance).

Accordingly, the officers' detection of the methamphetamine odor, without the assistance of any sense-enhancing device, was not an unlawful search. *See People v. Baker, supra.*

The People do not challenge the trial court's conclusion that the police officers' entry into the garage was an unlawful search. Hence, we will not disturb this determination.

Similarly, the People do not directly challenge the trial court's conclusion that because the dog sniff was conducted without a warrant, it represented an unlawful search. We note, however, that the trial court's conclusion would be a substantial extension of ex-

isting Colorado precedent. *See People v. Haley,* 41 P.3d 666, 672 (Colo.2001); *People v. May,* 886 P.2d 280 (Colo.1994).

We cannot decide the latter issue on the existing record because the trial court made no factual finding of the precise location of the dog sniff. Accordingly, we conclude that on remand the trial court should make a finding as to the exact location of the dog sniff and whether that location was a public access area. *See People v. Shorty, supra.*

### B.

Next, we turn to whether the information in the search warrant affidavit, excluding the information concerning the dog sniff and the search of the garage, established probable cause. We conclude that it did.

 Under the Fourth Amendment, a search warrant must be supported by probable cause, which must exist within the four corners of the affidavit. Thus, when a reviewing court examines a search warrant after the fact to determine its validity, the appellate court should assess whether the affidavit provided the issuing judge or magistrate with a substantial basis for concluding that probable cause existed. *People v. Randolph,* 4 P.3d 477, 481 (Colo.2000).

Here, the investigator's observations of defendant's hands and his perception of the distinct methamphetamine smell emanating from defendant's clothing and person established probable cause to believe that defendant had recently been involved in the manufacture of methamphetamine. The facts that defendant verified he lived at the subject premises, he was known to have recently manufactured methamphetamine at a previous residence, and the police officers smelled the distinct odor of methamphetamine emanating from the premises established probable cause to believe that manufacturing occurred there. In combination, these facts constituted probable cause for issuance of the search warrant.

### C.

This determination of probable cause does not end our inquiry, however, because the police sought and obtained the search war-

rant in this case based partly on information that, according to the trial court, had been unlawfully acquired during the dog sniff and the search of the garage.

 The trial court apparently used the analytical framework applicable when a police officer-affiant includes information in a search warrant application that is either intentionally false or in reckless disregard of the truth. In those circumstances, a trial court ruling on a motion to suppress must strike the false or misleading information from the affidavit and then determine whether the remaining statements establish probable cause. *See, e.g., People v. Kazmierski,* 25 P.3d 1207, 1210 (Colo.2001). However, this analysis is not adequate where, as here, police officers conduct a partially unlawful search of the premises and then include information obtained from that search in the application for a warrant to search the same premises.

In *People v. Schoondermark,* 759 P.2d 715 (Colo.1988), the supreme court rejected inevitable discovery analysis and, relying on *Murray v. United States,* 487 U.S. 533, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988), explained that the independent source doctrine is the correct approach. *Murray* mandates a two-part inquiry:

> The ultimate question ... is whether the search pursuant to warrant was in fact a genuinely independent source of the information and tangible evidence at issue here. This would not have been the case if the [officers'] decision to seek the warrant was prompted by what [they] had seen during the initial entry, or if information obtained during that entry was presented to the Magistrate and affected his decision to issue the warrant.

*Murray v. United States, supra,* 487 U.S. at 542, 108 S.Ct. at 2536, 101 L.Ed.2d at 483–84. But see *People v. Hebert,* 46 P.3d 473 (Colo.2002)(upholding a search warrant because the information in the affidavit sufficed to establish probable cause after redaction of unlawfully obtained information, without remanding for determination of the role this information played in the decision to seek the

warrant); *People v. Alvarado*, 31 P.3d 145, 146 (Colo.2001)(per curiam)(same).

1.

In *Schoondermark*, the supreme court addressed the first question of the *Murray* analysis and remanded for additional findings as to whether the police officers' observations during their illegal entry affected their decision to seek a warrant. The court directed that:

> [i]n making these findings the trial court should allow the parties an opportunity to supplement the existing record with additional evidence, and the People must bear the burden of establishing by a preponderance of the evidence that the officers would have sought the warrant even absent the information gained by the initial illegal entry.

*People v. Schoondermark, supra,* 759 P.2d at 719.

Remand also was the outcome in *Murray v. United States, supra,* which the Supreme Court has not revisited. A number of federal district courts have considered on remand whether officers' decisions to seek search warrants were tainted by their observations during earlier unlawful searches. *See, e.g., United States v. Arias*, 992 F.Supp. 832 (S.D.W.Va.1997)(finding that officers manufactured exigent circumstances in order to conduct an illegal search before obtaining a warrant to search the same premises), *aff'd*, 176 F.3d 476 (4th Cir.1999)(subsequent appeal); *United States v. Hill*, 906 F.Supp. 570 (D.Or.1995)(finding that officers would have sought a warrant even if they had not discovered evidence unlawfully), *aff'd*, 101 F.3d 706 (9th Cir.1996); *see also United States v. Markling*, 7 F.3d 1309, 1315–16 (7th Cir.1993)(discussing policies underlying the independent source doctrine and remanding for trial court findings whether an illegal search of defendant's briefcase contributed to officer's decision to obtain a warrant for defendant's hotel room).

 Nevertheless, defendant contends the People waived any argument based on the independent source doctrine because they did not explicitly raise it in the trial court. However, under our de novo review of legal conclusions, *People v. Ortega, supra,* we must apply the correct standard. *See People v. Schoondermark, supra,* 759 P.2d at 718 (relying sua sponte on independent source doctrine rather than the inevitable discovery argument advanced by the People); *see also People v. Saint–Veltri*, 945 P.2d 1339 (Colo.1997). However, if our analysis went no further than that of the trial court, then denial of defendant's suppression motion would be affirmed. Finally, we are satisfied that the People preserved the issue in the trial court by arguing that the police officers had intended to obtain a warrant before they arrived at the premises and that the lawfully obtained information in the warrant affidavit established probable cause.

Nevertheless, the existing record lacks a trial court finding whether the police officers' observations of the decongestant packaging during the illegal entry of the garage or the results of the dog sniff affected their decision to seek a warrant. Hence, we conclude that remand is necessary for further findings on these questions, according to the procedures outlined in *Schoondermark*, to determine whether "a later, lawful seizure is genuinely independent of an earlier, tainted one." *Murray v. United States, supra,* 487 U.S. at 542, 108 S.Ct. at 2535, 101 L.Ed.2d at 483.

2.

The record also lacks any finding concerning the second *Murray* question: whether the unlawfully obtained information included in the affidavit affected the district court's decision to issue the search warrant. In *Schoondermark*, the supreme court did not remand for findings on this issue because it was "clear that the warrant was not based upon any information obtained during the initial entry into the house." *People v. Schoondermark, supra,* 759 P.2d at 719; see *People v. Morley*, 4 P.3d 1078, 1081 (Colo. 2000)(same).

By contrast, in *People v. Sprowl*, 790 P.2d 848, 849 (Colo.App.1989), a division of this court analyzed an affidavit under the second question of the *Murray* analysis, implicitly treating it as a question of law. The division concluded that the officers' observations

made during the initial illegal search necessarily affected the court's decision to issue a search warrant for the premises because, disregarding the illegally obtained information in the warrant affidavit, the remaining lawfully obtained information did not establish probable cause. *See also People v. Hebert, supra,* 46 P.3d at 481 ("de novo review is the proper standard for an appellate court to apply to determine whether a redacted affidavit is sufficient to establish probable cause").

▮ Following the approach in *Sprowl* and *Hebert,* we conclude that the question whether illegally obtained information included in a warrant affidavit affected the issuing court's decision is a question of law.

▮ Here, because as explained above, the lawfully obtained information in the warrant affidavit established probable cause, we conclude that the court would have issued the search warrant even if presented with an affidavit omitting the information about the unlawful search of the garage and the dog sniff. *See* Crim. P. 41(d) ("[i]f the judge is satisfied that grounds for the application exist, or that there is probable cause to believe that such grounds exist, he shall issue a search warrant"; emphasis added); 3 Wayne R. LaFave, *Search and Seizure* § 11.4(f), at 290–91 (3d ed.1996)(summarizing federal circuit court decisions to demonstrate that, under *Murray,* the appropriate method for determining whether the decision to issue the warrant was unaffected by the illegally obtained information is to excise that information from the warrant and determine whether the remaining information establishes probable cause, rather than to inquire into the thought processes of the issuing magistrate).

Accordingly, on remand the trial court need not make any additional findings with respect to the second question of the *Murray* analysis.

We address defendant's remaining contentions to avoid another appeal on those issues, in the event that the trial court again denies the motion to suppress.

## II.

▮ Defendant contends that his conviction for manufacture of methamphetamine was not supported by sufficient evidence. We are not persuaded.

When reviewing for sufficiency, we consider the evidence in the light most favorable to the People, *People v. Bennett,* 515 P.2d 466 (Colo. 1973), giving the People the benefit of every reasonable inference. *People v. Cole,* 926 P.2d 164 (Colo. App. 1996).

Applying this standard, and in light of the fact that both the essential ingredients to defendant's manufacturing process and d-methamphetamine in solution were found on the premises, we reject defendant's challenge to the sufficiency of the evidence.

## III

▮ Finally, defendant argues that the trial court abused its discretion in sentencing him to sixteen years' imprisonment. We do not agree.

▮ Sentencing is a discretionary decision that should not be overturned, absent an abuse of discretion. *People v. Luu,* 983 P.2d 15 (Colo. App. 1998). Here, the trial court considered relevant factors, § 18-1-409, C.R.S. 2001, no one of which controls. *People v. Wilson,* 599 P.2d 970 (Colo. App. 1979).

The court acknowledged mitigating factors, but then imposed a sixteen-year sentence, which was within the statutorily prescribed range for an "extraordinary risk of harm" crime. Sections 18-18-405(1)(a); 18-1-105(V)(A); 18-1-105(9.7)(a); and 18-1-105(9.7)(b)(XI). Neither the People's request for a twelve-year sentence, nor the trial court's reference to defendant being on bond for another drug offense at the time of the crimes charged, shows that the court abused its considerable sentencing discretion, especially given the seriousness of and harm to society caused by the crime of manufacturing methamphetamine.

Although defendant does not expressly request a proportionality review, he cites *People v. Cohen,* 617 P.2d 1205, 1207 (Colo. 1980) for the proposition that penalties must be "proportionate to the seriousness of of-

fenses." Hence, to avoid the possibility of a later appeal on this issue, in light of *Close v. People*, 48 P.3d 528 (Colo.2002), we address proportionality using the criteria set forth in that decision.

Because defendant was convicted of a serious offense, we proceed directly to the second part of an abbreviated proportionality review: a consideration of the harshness of the penalty. The legislatively mandated sentencing range for grave and serious crimes will be constitutionally proportionate in almost every instance. *Close v. People, supra.*

The determination of whether a sentence is constitutionally proportionate presents a question of law. *People v. Anaya*, 894 P.2d 28 (Colo. App. 1994). Here, given the seriousness of defendant's crimes and the necessary deference to legislatively established sentences, we conclude that the sentence of sixteen years was proportionate, and need not engage in an extended proportionality review.

Accordingly, we reject defendant's contention that he received an excessive sentence.

The case is remanded for further proceedings consistent with the views expressed in this opinion.

Judge METZGER and Judge CASEBOLT concur.